**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KENNETH R. WYSOCKI, on behalf of plaintiff and the classes described herein, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| CITY NATIONAL BANK; and CSI FINANCIAL SERVICES LLC; | ) ) ) |
| Defendants. | ) ) |

## COMPLAINT  – CLASS ACTION

## INTRODUCTION

1.     Plaintiff brings this action to secure redress for fraudulent credit and collection practices engaged in by City National Bank and CSI Financial Services LLC ("CSI"). City National Bank and CSI purchase defaulted health care debts from Florida Hospital.  City National Bank and CSI then send the patients documents purporting to state that making payments on the debt constitutes acceptance of a revolving credit contract (credit card) offered by City National Bank.  CSI devised the program and is involved in the collection of the purported contracts.

2.     Plaintiff contends that this practice involves the use of fraudulent and unfair practices to collect defaulted debts, in violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§1692 et seq. ("FDCPA"), and the issuance of credit cards without any request or application, in violation of the Truth in Lending Act, 15 U.S.C. §§1601 et seq. ("TILA") and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226.

3.     Plaintiff also alleges violation of the Florida Consumer Collection Practices Act and seeks a declaration that the practice complained of does not create a contract with any patient authorizing the imposition of finance charges at more than the statutory rate or late fees.

1

## JURISDICTION AND VENUE

4.     This Court has jurisdiction under 15 U.S.C. §§1640 (TILA) and 1692k (FDCPA) and 28 U.S.C. §§1331, 1337 and 1367.

5.     Venue in this District is proper because the collection documents at issue were sent to and received by plaintiff in Chicago.

## PARTIES

6.     Plaintiff Kenneth R. Wysocki is a resident of the Northern District of Illinois.

7.     Defendant City National Bank is a federally chartered corporation with principal offices at City National Plaza, 555 South Flower Street, Los Angeles, CA 90071.

8.     Defendant CSI is a limited liability company with offices at 3636 Nobel Drive, Suite 215, San Diego, CA 92122.

## FACTS

9.      In August 2008, plaintiff was injured in an auto accident in Florida and incurred expenses for treatment at Florida Hospital.

10.     Plaintiff was entitled to payment for the treatment by both his own insurer and that of the other driver involved in the accident.

11.     While awaiting payment of the last portion of the bill by insurance, Florida Hospital declared it to be in default.

12.     By letter of August 14, 2009 (Exhibit A), Florida Hospital notified plaintiff that the bill would be considered in default and sent to a collection agency on August 28, 2009.

13.     Exhibit A is a form letter regularly used by Florida Hospital to notify patients that they are in default.

14.     On September 2, 2009, plaintiff was sent the letter attached as Exhibit B, informing plaintiff that "Florida Hospital has retained the services of City National Bank to

provide patient financing arrangements" and  that City National Bank offered "revolving credit, the same concept that your own bank and department store charge cards use."

15.     Although Exhibit B purports to come from Florida Hospital, the San Diego post office box used as a return address on Exhibit B is the same as that used on Exhibits C-E as the inquiry address for City National Bank. Also, it has a form designation in the lower left corner including "CSI".

16.     The telephone number 888-334-4022 on Exhibit B is answered by a "Bank Data Center," operated by CSI, although the number is represented to be that of City National Bank.

17.     CSI states on its web site (http://www.csifinancial.com/index.html) that it offers hospitals and other health care providers financing for their patients and is responsible for administering the programs and sending all correspondence to the patients:

>   **Since 1992, CSI Financial Services has provided hospitals and other types of healthcare providers throughout the nation with easy to implement patient loan programs that meet the needs of both the providers and their patients.**
>
>   **Serving over 150 hospital clients in 35 states, CSI provides proven solutions for managing and collecting self-pay accounts. Healthcare providers that implement CSI's loan programs realize an immediate increase to cash-flow and are able to instantly offer their patients payment flexibility for outstanding bills, all in a format that is inexpensive and easy to administer. CSI's loan programs increase patient satisfaction and enhance community relations.**
>
>   **Best of all, CSI's programs are simple to implement. Patient approvals are automatic; there is no enrollment program for the hospital to administer or written patient application required.**
>
>   **CSI oversees all aspects of customer service for the hospitals and patients we serve. In addition, CSI manages the monthly billing, collections, patient counseling, credit reporting, as well as monthly reporting to the hospitals. Our attention to service ensures that your patients are treated with the dignity and respect they deserve.**
>
>   **Please contact us for more information on how the various products and services offered by CSI can enhance your revenue cycle and lead to better patient satisfaction. . . .**

18.     Accordingly, plaintiff alleges that City National Bank and CSI sent

plaintiff <u>Exhibit B</u>.

19. <u>Exhibit B</u> is a form letter regularly used by City National Bank and CSI.

20. On September 4, 2009, City National Bank and CSI sent plaintiff the letter attached as <u>Exhibit C</u>, stating that City National Bank had "purchased your Health Care Account(s)" and that "you have qualified for a revolving loan from the Bank." The letter specifically stated that the credit arrangement allowed plaintiff "to pay for additional hospital costs on credit as you pay off your old debt." The letter further stated that "By paying at least the Minimum Payment Due, you are agreeing to be bound by the terms and conditions of the enclosed Patient Financing Plan Agreement and Disclosure Statement."

21. <u>Exhibit C</u> consists of form documents regularly used by City National Bank and CSI.

22. The telephone number 888-334-4022 on <u>Exhibit C</u> is answered by a "Bank Data Center," operated by CSI.

23. The "Patient Financing Plan Agreement and Disclosure Statement" is a revolving credit arrangement or credit card usable for health care debts. City National Bank is the creditor.

24. On information and belief, based on CSI's web site, CSI "manages the monthly billing, collections, patient counseling, credit reporting, as well as monthly reporting to the hospitals" for patients to whom <u>Exhibit C</u> is sent.

25. City National Bank and CSI have agreements with Florida Hospital for the purchase of delinquent and defaulted health care debts.

26. City National Bank, on information and belief, in fact purchases delinquent and defaulted health care debts.

27. City National Bank and CSI regularly send documents in the form represented by <u>Exhibit C</u> to the patients whose debts are purchased by City National Bank, via the United States Mail.

4

28.     A document on CSI's web site states:

**Healthcare providers like Florida Hospital readily attest to the benefits of planning ahead. As Coy Ingram, Director of Self Pay Management, notes, "We implemented a patient loan program in April 2007, making revolving lines of credit available to patients at all points of patient access and from the financial services business office. In the first 12 months, we qualified approximately 15,000 patients for the program, increased cash collections and significantly reduced bad debt write-offs.**

29.     At no time did plaintiff consent to any extension of credit from City National Bank or request the issuance of revolving credit by City National Bank.

30.     The statement in <u>Exhibit C</u> that "By paying at least the Minimum Payment Due, you are agreeing to be bound by the terms and conditions of the enclosed Patient Financing Plan Agreement and Disclosure Statement" is false and fraudulent.

31.     The person to whom the letter is sent is likely to owe an amount in excess of the "Minimum Payment Due."

32.     The conduct which <u>Exhibit C</u> states is "acceptance" of a revolving credit plan  – making a payment on a debt  –  is conduct which the recipient is legally obligated to perform and likely to perform without regard to whether he or she desires an extension of credit. Defendant is no more entitled to "notify" patients that such an act constitutes acceptance of a contract than to "notify" patients that their continuing to breathe does so.

33.     Furthermore, in many cases, payments are made on behalf of a patient by insurance companies and other benefit providers who are legally obligated to make such payments, and who are unlikely to even know that defendant has announced that the making of such payments will be deemed acceptance by the patient of a revolving credit plan.

34.     At some point during the fall of 2009, the insurance company of the other driver involved in the accident made a payment on the bill that is the subject of <u>Exhibit A</u> to either Florida Hospital or City National Bank. That insurer was legally obligated to make such payment because it had issued an insurance policy to the driver who had injured plaintiff, and plaintiff had made a claim.

5

35.     At no time did plaintiff himself, as opposed to an insurance company, pay either Florida Hospital or City National Bank.

36.     On information and belief, based on plaintiff's own experience, CSI's web site, and the contents of the form documents, City National Bank and CSI do nothing to secure a patient's assent to the "Patient Financing Plan Agreement and Disclosure Statement" other than send documents in the form represented by Exhibits C-G.

37.     According to CSI's web site, "No application required - Acceptance is automatic and is based on information the provider has already collected in their normal course of business."

38.     At no time did plaintiff agree to pay 9.9% interest on the health care bill at issue.

39.     Florida Hospital was not entitled to charge plaintiff 9.9% interest without an agreement to that effect.

40.     Under Fla. Stat. §687.01, "In all cases where interest shall accrue without a special contract for the rate thereof, the rate is the rate provided for in s. 55.03."  Fla. Stat. §55.03 provides that a designated public official shall set an interest rate annually by "averaging the discount rate of the Federal Reserve Bank of New York for the preceding year, then adding 500 basis points to the averaged federal discount rate."

41.     The interest rate established in this manner was 6.0% for 2010 and 8% for 2009.  http://www.myfloridacfo.com/aadir/interest.htm.

42.     At no time did City National Bank or CSI provide plaintiff with the disclosures described in 15 U.S.C. §1692g.

43.     On or about October 4, 2009, City National Bank and CSI sent plaintiff the document attached as Exhibit D. Based on the statements on CSI's web site, the document was sent by CSI on behalf of City National Bank to satisfy obligations imposed by the Truth in Lending Act on City National Bank.

6

44.     The web site, www.bankdatacenter.com, that appears on Exhibit D is issued to CSI.

45.     Exhibit D creates the false impression that there is a valid revolving credit account with plaintiff.

46.     Exhibit D does not contain the notice described in 15 U.S.C. §1692e(11).

47.     On or about October 14, 2009, City National Bank and CSI sent plaintiff the document attached as Exhibit E.

48.     Exhibit E creates the false impression that there is a valid revolving credit account with plaintiff.

49.     Exhibit E does not contain the notice described in 15 U.S.C. § 1692e(11).

50.     On or about November 4, 2009, City National Bank and CSI sent plaintiff the document attached as Exhibit F.

51.     Based on the statements on CSI's web site, the document was sent by CSI on behalf of City National Bank to satisfy obligations imposed by the Truth in Lending Act on City National Bank.

52.     The web site, www.bankdatacenter.com, that appears on Exhibit F is issued to CSI.

53.     Exhibit F creates the false impression  that there is a valid revolving credit account with plaintiff.

54.     Exhibit F does not contain the notice described in 15 U.S.C. §1692e(11).

55.     Exhibits D and F add $35.00 late charges and finance charges at 9.9% to the purported debt.

56.     Plaintiff had not agreed to pay any such late charges or finance charges.

57.     On or about November 6, 2009, City National Bank and CSI sent plaintiff the document attached as Exhibit G.

58.     Exhibit G creates the false impression that there is a valid revolving credit

account with plaintiff.

59.    <u>Exhibit G</u> does not contain the notice described in 15 U.S.C. § 1692e(11).

## COUNT I – FDCPA – CLASS CLAIM

60.    Plaintiff incorporates paragraphs 1-59.

61.    This claim is against City National Bank and CSI.

62.    Defendants City National Bank and CSI violated the FDCPA by sending patients documents in the form represented by <u>Exhibit C</u>.

63.    The form of document represented by <u>Exhibit C</u> violates the FDCPA because:

    a.    It does not contain the disclosures required by 15 U.S.C. §§1692g and 1692e(11).

    b.    It falsely states that payment of an amount in excess of the "Minimum Payment Due" constitutes agreement "to be bound by the terms and conditions of the enclosed Patient Financing Plan Agreement and Disclosure Statement," in violation of 15 U.S.C. §§1692e, 1692e(2), 1692e(5), and 1692e(10).

    c.    It adds interest and charges to the debt which are not authorized by contract or statute, in violation of 15 U.S.C. §§1692e(2), 1692e(10), 1692f, and 1692f(1).

64.    Section 1692e provides:

**§ 1692e.    False or misleading representations [Section 807 of P.L.]**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

**(2)    The false representation of--**

**(A)    the character, amount, or legal status of any debt; . . .**

8

**(5)    The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .**

**(10)    The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.**

**(11) The failure to disclose in the initial written communication  with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action. . . .**

65.    Section 1692f provides:

**§ 1692f.        Unfair practices [Section 808 of P.L.]**

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**(1)    The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. . . .**

66.    Section 1692g provides:

**§ 1692g.  Validation of debts**

**(a) Notice of debt; contents.  Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--**

**(1) the amount of the debt;**

**(2) the name of the creditor to whom the debt is owed;**

**(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;**

**(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the**

9

**debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and**

**(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.**

**(b) Disputed debts. If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this title may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.**

**(c) Admission of liability. The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.**

**(d) Legal pleadings. A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a).**

**(e) Notice provisions. The sending or delivery of any form or notice which does not relate to the collection of a debt and is expressly required by the Internal Revenue Code of 1986 [*26 USCS §§ 1* et seq.], title V of Gramm-Leach-Bliley Act [*15 USCS §§ 6801* et seq.], or any provision of Federal or State law relating to notice of data security breach or privacy, or any regulation prescribed under any such provision of law, shall not be treated as an initial communication in connection with debt collection for purposes of this section.**

## <u>CLASS ALLEGATIONS</u>

67.    Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiff brings this claim on behalf of a class, consisting of (a) all natural persons (b) who were sent a document in the form represented by <u>Exhibit C</u> (c) in connection with a debt incurred with Florida Hospital (d) during a period beginning on a date one year prior to the filing of this action and ending 20 days after the

filing of this action.

68.    The class is so numerous that joinder is impracticable. On information and belief, based on the statement of the Florida Hospital executive on CSI's web site, there are more than 50 members of the class.

69.    There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common questions are:

a.    Whether the form of document represented by <u>Exhibit C</u> violates the FDCPA because it does not contain the disclosures required by 15 U.S.C. §§1692g and 1692e(11).

b.    Whether the form of document represented by <u>Exhibit C</u> violates the FDCPA because it falsely states that payment of an amount of at least the "Minimum Payment Due" constitutes agreement "to be bound by the terms and conditions of the enclosed Patient Financing Plan Agreement and Disclosure Statement," in violation of 15 U.S.C. §§1692e, 1692e(2), 1692e(5), and 1692e(10).

c.    Whether the form of document represented by <u>Exhibit C</u> violates the FDCPA because it adds interest to the debt which is not authorized by contract or statute, in violation of 15 U.S.C. §§1692e(2), 1692e(10), 1692f, and 1692f(1).

70.    Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

71.    Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

72.    A class action is superior to other alternative methods of adjudicating this

dispute. Individual actions are not economically feasible. Members of the class are likely to be unaware of their rights. Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

      (1)      Statutory damages;

      (2)      Actual damages equal to all finance charges and late charges charged by City National Bank;

      (3)      Attorney's fees, litigation expenses and costs of suit;

      (4)      Such other or further relief as the Court deems proper.

## <u>COUNT II – FDCPA – CLASS CLAIM</u>

73.      Plaintiff incorporates paragraphs 1-59.

74.      This claim is against City National Bank and CSI.

75.      Defendants City National Bank and CSI violated the FDCPA by sending patients documents in the form represented by <u>Exhibit B</u>.

76.      The form of document represented by <u>Exhibit B</u> violates the FDCPA because it purports to come from Florida Hospital when that is not the case, in violation of 15 U.S.C. §1692e(14). In addition, it fails to contain the notice required by 15 U.S.C. §1692e(11) and is false and misleading, in violation of 15 U.S.C. §1692e(10). .

77.      Section 1692e(14) provides:

**§ 1692e.      False or misleading representations [Section 807 of P.L.]**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

**(14)      The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization. . . .**

12

## CLASS ALLEGATIONS

78.     Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiff brings this claim on behalf of a class, consisting of (a) all natural persons (b) who were sent a document in the form represented by <u>Exhibit B</u> (c) in connection with a debt incurred with Florida Hospital (d) during a period beginning on a date one year prior to the filing of this action and ending 20 days after the filing of this action.

79.     The class is so numerous that joinder is impracticable.  On information and belief, based on the statement of the Florida Hospital executive on CSI's web site, there are more than 50 members of the class.

80.     There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common questions are whether the form of document represented by <u>Exhibit B</u> violates the FDCPA because it is sent under a false name, does not contain the disclosures required by 15 U.S.C. §1692e(11), or is false or misleading.

81.     Plaintiff's claim is typical of the claims of the class members.  All are based on the same factual and legal theories.

82.     Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

83.     A class action is superior to other alternative methods of adjudicating this dispute.   Individual actions are not economically feasible.  Members of the class are likely to be unaware of their rights.  Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

(1)     Statutory damages;

13

(2)     Attorney's fees, litigation expenses and costs of suit;

(3)     Such other or further relief as the Court deems proper.

## COUNT III – CLASS CLAIM FOR DECLARATORY AND EQUITABLE RELIEF

84.     Plaintiff incorporates paragraphs 1-59.

85.     This claim is against both  defendants.

86.     By sending patients or allowing the sending of documents in the form represented by <u>Exhibits C-G</u>, defendants assert that a valid revolving credit agreement exists between the patient and City National Bank.

87.     Plaintiff and the class assert that no such agreement can be created by the procedure employed by defendants.

88.     Declaratory and injunctive relief are necessary in order to resolve this controversy.

## CLASS ALLEGATIONS

89.     Pursuant to Fed. R.Civ.P. 23(a) and (b)(2), plaintiff brings this claim on behalf of a class, consisting of (a) all natural persons (b) who were sent a document in the form represented by <u>Exhibit C</u> (c) in connection with a debt incurred with Florida Hospital (d)  during a period beginning on a date one year prior to the filing of this action and ending 20 days after the filing of this action.

90.      The class is so numerous that joinder is impracticable. On information and belief, based on the statement by the Florida Hospital executive quoted on CSI's web site, there are more than 50 members of the class.

91.      There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common questions are:

a.      Whether defendants can create a contract in the manner stated in <u>Exhibit C</u>.

14

       b.     Whether plaintiff and class members have any obligation to under Exhibit C to pay finance charges or late charges.

92.    Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

93.    Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

94.    Defendants  have acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.  Specifically, defendants have sent or authorized the sending to the class of documents in the form of Exhibit C and then treated the addressees as having entered into a revolving credit account with City National Bank.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

(1)    A declaration that no contract exists as a result of the sending of Exhibit C, and that City National Bank is merely the assignee of whatever rights Florida Hospital had;

(2)    A declaration that Florida Hospital was not entitled to charge late fees or interest or finance charges at more than the statutory rate;

(3)    A declaration that none of the finance charges and late charges provided for by Exhibit C are owed;

(4)    Restitution of all excess finance charges and late charges paid by class members;

(5)    Costs of suit;

(6)    Such other or further relief as the Court deems proper.

15

## COUNT IV – FDCPA – CLASS CLAIM

95.    Plaintiff incorporates paragraphs 1-59.

96.    This claim is against City National Bank and CSI.

97.    Defendants City National Bank and CSI violated the FDCPA by sending patients documents in the form represented by Exhibits D and F.

98.    The form of document represented by Exhibits D and F violates the FDCPA because:

      a.    It does not contain the disclosures required by 15 U.S.C. §1692e(11).

      b.    It creates the false impression that a contract on the terms of the "Patient Financing Plan Agreement and Disclosure Statement" exists, when this is not the case, in violation of 15 U.S.C. §§1692e, 1692e(2), 1692e(5), and 1692e(10).

      c.    It adds finance charges and late charges to the debt which are not authorized by contract or statute, in violation of 15 U.S.C. §§1692e(2), 1692e(10), 1692f, and 1692f(1).

## CLASS ALLEGATIONS

99.    Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiff brings this claim on behalf of a class, consisting of (a) all natural persons (b) who were sent a document in the form represented by Exhibits D and F (c) in connection with a debt incurred with Florida Hospital (d) during a period beginning on a date one year prior to the filing of this action and ending 20 days after the filing of this action.

100.    The class is so numerous that joinder is impracticable. On information and belief, based on the statement by the Florida Hospital executive quoted on CSI's web site, there are more than 50 members of the class.

101.    There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members.

16

The predominant common questions are:

      a.    Whether the form of document represented by <u>Exhibits D and F</u> violates the FDCPA because it does not contain the disclosures required by 15 U.S.C. §1692e(11).

      b.    Whether the form of document represented by <u>Exhibits D and F</u> violates the FDCPA because it imposed finance charges and late charges that the patient is under no legal obligation to pay, in violation of 15 U.S.C. §§1692e(2), 1692e(10), 1692f, and 1692f(1).

102.    Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

103.    Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

104.    A class action is superior to other alternative methods of adjudicating this dispute. Individual actions are not economically feasible. Members of the class are likely to be unaware of their rights. Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

      (1)    Statutory damages;

      (2)    Actual damages equal to all finance charges and late charges charged by City National Bank;

      (3)    Attorney's fees, litigation expenses and costs of suit;

      (4)    Such other or further relief as the Court deems proper.

## <u>COUNT V – FDCPA – CLASS CLAIM</u>

105.    Plaintiff incorporates paragraphs 1-59.

106.     This claim is against City National Bank and CSI.

107.     Defendants City National Bank and CSI violated the FDCPA by sending patients documents in the form represented by Exhibit E.

108.     The form of document represented by Exhibit E violates the FDCPA because:

      a.     It does not contain the disclosures required by 15 U.S.C. §1692e(11).

      b.     It creates the false impression that a contract on the terms of the "Patient Financing Plan Agreement and Disclosure Statement" exists, when this is not the case, in violation of 15 U.S.C. §§1692e, 1692e(2), 1692e(5), and 1692e(10).

## CLASS ALLEGATIONS

109.     Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiff brings this claim on behalf of a class, consisting of (a) all natural persons (b) who were sent a document in the form represented by Exhibit E (c) in connection with a debt incurred with Florida Hospital (d) during a period beginning on a date one year prior to the filing of this action and ending 20 days after the filing of this action.

110.     The class is so numerous that joinder is impracticable. On information and belief, based on the statement by the Florida Hospital executive quoted on CSI's web site, there are more than 50 members of the class.

111.     There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common questions are:

      a.     Whether the form of document represented by Exhibit E violates the FDCPA because it does not contain the disclosures required by 15 U.S.C. §1692e(11).

      b.     Whether the form of document represented by Exhibit E violates the

FDCPA because it imposed finance charges and late charges that the patient is under no legal obligation to pay, in violation of 15 U.S.C. §§1692e(2), 1692e(10), 1692f, and 1692f(1).

112. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

113. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

114. A class action is superior to other alternative methods of adjudicating this dispute. Individual actions are not economically feasible. Members of the class are likely to be unaware of their rights. Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

(1) Statutory damages;

(2) Actual damages equal to all finance charges and late charges charged by City National Bank;

(3) Attorney's fees, litigation expenses and costs of suit;

(4) Such other or further relief as the Court deems proper.

## COUNT VI – FDCPA – CLASS CLAIM

115. Plaintiff incorporates paragraphs 1-59.

116. This claim is against City National Bank and CSI.

117. Defendants City National Bank and CSI violated the FDCPA by sending patients documents in the form represented by Exhibit G.

118. The form of document represented by Exhibit G violates the FDCPA because:

19

a. It does not contain the disclosures required by 15 U.S.C. §1692e(11).

b. It creates the false impression that a contract on the terms of the "Patient Financing Plan Agreement and Disclosure Statement" exists, when this is not the case, in violation of 15 U.S.C. §§1692e, 1692e(2), 1692e(5), and 1692e(10).

## CLASS ALLEGATIONS

119. Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiff brings this claim on behalf of a class, consisting of (a) all natural persons (b) who were sent a document in the form represented by Exhibit G (c) in connection with a debt incurred with Florida Hospital (d) during a period beginning on a date one year prior to the filing of this action and ending 20 days after the filing of this action.

120. The class is so numerous that joinder is impracticable. On information and belief, based on the statement by the Florida Hospital executive quoted on CSI's web site, there are more than 50 members of the class.

121. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common questions are:

a. Whether the form of document represented by Exhibit G violates the FDCPA because it does not contain the disclosures required by 15 U.S.C. §1692e(11).

b. Whether the form of document represented by Exhibit G violates the FDCPA because it imposed finance charges and late charges that the patient is under no legal obligation to pay, in violation of 15 U.S.C. §§1692e(2), 1692e(10), 1692f, and 1692f(1).

122. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

123.     Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

124.     A class action is superior to other alternative methods of adjudicating this dispute.   Individual actions are not economically feasible. Members of the class are likely to be unaware of their rights.  Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

     (1)    Statutory damages;

     (2)    Actual damages equal to all finance charges and late charges charged by City National Bank;

     (3)    Attorney's fees, litigation expenses and costs of suit;

     (4)    Such other or further relief as the Court deems proper.

## COUNT VII  – TILA  – CLASS CLAIM

125.     Plaintiff incorporates paragraphs 1-59.

126.     This claim is against City National Bank only.

127.     The Truth in Lending Act prohibits the sending of unsolicited credit cards. 15 U.S.C. §1642 provides:

**§ 1642.**     **Issuance of credit cards [TILA § 132]**

**No credit card shall be issued except in response to a request or application therefor.  This prohibition does not apply to the issuance of a credit card in renewal of, or in substitution for, an accepted credit card.**

128.     A "credit card" is defined (15 U.S.C. §1602(k)) as "any card, plate, coupon book or other credit device existing for the purpose of obtaining money, property, labor, or services on credit."

129.     A credit line which can be accessed with an account number is a "credit

21

card" whether or not a physical piece of plastic exists.

130. <u>Exhibit C</u> purports to establish a revolving line of credit designated by an account number, and thus constitutes a credit card.

131. <u>Exhibit C</u> was not a renewal of or substitution for any accepted, non-closed credit card or account.

## CLASS ALLEGATIONS

132. Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiff brings this action on behalf of a class. The class consists of (a) all persons (b) to whom defendants sent a document in the form represented by <u>Exhibit C</u> during the year prior to the filing of this action (c) in connection with a debt incurred with Florida Hospital.

133. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the statement by the Florida Hospital executive on CSI's web site, there are at least 40 members of the class.

134. There are questions of law and fact common to the class, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether the sending of <u>Exhibit C</u> under the circumstances set forth above violates the TILA.

135. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

136. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

137. A class action is superior to other alternative methods of adjudicating this dispute. Individual actions are not economically feasible. Members of the class are likely to be unaware of their rights. Congress intended class actions to be the principal enforcement mechanism under the TILA.

WHEREFORE, the Court should enter judgment in favor of plaintiff and the class

and against defendant for:

>(1)    Statutory damages;

>(2)    Actual damages equal to any fees or interest thereon obtained by defendant;

>(3)    A declaration that the class members are not obligated to pay such fees and interest;

>(4)    Attorney's fees, litigation expenses and costs of suit;

>(5)    Such other and further relief as the Court deems proper.

## COUNT VIII – FLORIDA CONSUMER COLLECTION PRACTICES ACT – CLASS CLAIM

138.    Plaintiff incorporates paragraphs 1-59.

139.    This claim is against City National Bank and CSI.

140.    The Florida Consumer Collection Practices Act, Fla. Stats. §559.72, provides:

> **Prohibited practices generally**

> **In collecting consumer debts, no person shall: . . .**

> **(9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows that the right does not exist . . .**

141.    Defendants City National Bank and CSI violated Fla. Stats. §559.72(9) by sending patients documents in the form represented by Exhibits C-G.

## CLASS ALLEGATIONS

142.    Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiff brings this claim on behalf of a class, consisting of (a) all natural persons (b) who were sent a document in the form represented by Exhibit C (c) in connection with a debt incurred with Florida Hospital (d) during a period beginning on a date 2 years prior to the filing of this action and ending 20 days after the filing of this action.

143.    The class is so numerous that joinder is impracticable.  On information and

belief, there are more than 50 members of the class.

144.     There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether defendant knowingly asserted the existence of a revolving credit agreement when one did not exist and knowingly charged finance charges and late fees it was not entitled to collect.

145.     Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

146.     Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

147.     A class action is superior to other alternative methods of adjudicating this dispute.   Individual actions are not economically feasible. Members of the class are likely to be unaware of their rights.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

(1)     Statutory damages;

(2)     Actual damages equal to all finance charges and late charges charged by City National Bank;

(3)     Attorney's fees, litigation expenses and costs of suit;

(4)     Such other or further relief as the Court deems proper.

s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Francis R. Greene
EDELMAN, COMBS, LATTURNER
        & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor

Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

## JURY DEMAND

Plaintiff demands trial by jury.

s/Daniel A. Edelman
Daniel A. Edelman

## <u>NOTICE OF LIEN AND ASSIGNMENT</u>

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.


<u>s/Daniel A. Edelman</u>
Daniel A. Edelman


Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)


T:\24616\Pleading\Revised Complaint_Pleading.WPD